IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PROCTOR ANDREW YOUNG,         )
                              )
      Plaintiff,          )
                              )
v.                            )     Case No. CIV-14-465-RAW
                              )
CITY OF IDABEL;               )
MAYOR TINA FOSHEE-THOMAS,     )
                              )
      Defendants.         )

## ORDER

Before the court is the motion of the defendant City of Idabel ("Idabel") for summary judgment. Plaintiff alleges various claims against the defendants arising out of his employment and termination as Fire Chief of Idabel. Defendant Foshee-Thomas was mayor of Idabel during the pertinent time period.[1]

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact" and "the movant is entitled to a judgment as a matter of law." Rule 56(a) F.R.Cv.P. The court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *See EEOC v. Abercrombie & Fitch Stores, Inc.,* 731 F.3d 1106, 1116 (10th Cir.2013). The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials

---

[1] Plaintiff names the mayor as a defendant in both her official and individual capacities. The Tenth Circuit holds, however, that when the city has been sued it is not necessary to also sue the mayor in her official capacity, as an official capacity suit is simply another way of pleading an action against the city. *See McDonald v. Wise,* 769 F.3d 1202, 1214-15 (10th Cir.2014).

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Schneider v. City of Grand Junction Police Dept.,* 717 F.3d 760, 767 (10th Cir.2013).

Plaintiff is an African-American who began as a volunteer with the Idabel Fire Department ("IFD") in 1995. He rose through the ranks and was promoted to Fire Chief in May, 2008. Foshee was elected mayor in April, 2011. Concerns about certain conduct were raised and an investigation conducted. Plaintiff was placed on administrative leave with pay on November 26, 2012. The mayor sent plaintiff a letter on December 14, 2012, advising he was terminated. The letter informed him of the right to appeal to the City Council, which plaintiff did. The decision to terminate was affirmed by the City Council on February 9, 2013. On October 9, 2013, plaintiff was also indicted in the District Court of McCurtain County, Oklahoma (#51-4). The charges were dismissed piecemeal, with the final two counts dismissed by order filed July 31, 2015. (#58-6).

Plaintiff's first claim against Idabel is that his discharge violates Title VII of the Civil Rights Act of 1964, which makes it unlawful "to discharge any individual . . . because of such individual's race . . . " 42 U.S.C. §2000e-2(a)(1). *See also Khalik v. United Airlines,* 671 F.3d 1188, 1192 (10th Cir.2012). For plaintiff to prevail, he must establish intentional discrimination through either direct or indirect evidence. *See Daniels v. United Parcel Service, Inc.,* 701 F.3d 620, 627 (10th Cir.2012). If there is no direct evidence of discrimination, the burden-shifting framework articulated in *McDonnell Douglas Corp. v.*

2

*Green,* 411 U.S. 792 (1973) is used to indirectly prove intentional discrimination. Plaintiff has presented no direct evidence of discrimination.[2]

Therefore, under *McDonnell Douglas*, (1) plaintiff has the burden of proving his prima facie case by a preponderance of the evidence; (2) if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employment action; and (3) if defendant carries that burden, the plaintiff has the opportunity to prove that the reasons offered by defendant are merely a pretext for discrimination.

To establish a prima facie case, plaintiff must show he (1) is a member of a protected class; (2) was qualified for the position; (3) was discharged despite his qualifications; and (4) the job was not eliminated after his discharge. *Baca v. Sklar,* 398 F.3d 1210, 1216 (10th Cir.2005). Plaintiff's burden at this stage is "slight." *Orr v. City of Albuquerque,* 417 F.3d 1144, 1149 (10th Cir.2005). The court finds it has been satisfied.

At the next stage, the court finds that Idabel has articulated a legitimate nondiscriminatory reason for the discharge, namely concern that plaintiff was engaging in improper conduct by reporting time as being "worked" when he was also working a separate job not related to being Fire Chief. Foshee engaged an employment attorney to conduct an investigation and these findings were presented to Foshee and the City Council.

---

[2] Direct evidence is evidence that, on its face, demonstrates that the employment decision was reached for discriminatory reasons. *Didier v. Abbott Laboratories,* 614 Fed.Appx. 366, 372 (10th Cir.2015).

Finally, the court finds plaintiff has failed to raise a genuine issue of material fact that this reason is pretextual. A plaintiff typically attempts to satisfy his burden by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence. *See Mackenzie v. City & County of Denver,* 414 F.3d 1266, 1278 (10th Cir.2005). Here, plaintiff places principal reliance upon Exhibit #58-6, which is an order by the District Court of McCurtain County, dismissing the final two criminal counts against plaintiff.

This is a somewhat unusual document. If the District Attorney wished to dismiss criminal counts (so far as this court is aware) this can be done by motion. In this instance, the order reflects that the State and the defendant agreed that the defendant's motion to quash should be reconsidered. The district court did so, and in the course of granting dismissal made "factual findings" which are favorable to plaintiff in this civil action (i.e., the defendant in the criminal action). Again, so far as this court is aware, such factual findings were unnecessary to dismissing the criminal case. Moreover, they were not factual findings made after a contested evidentiary hearing, but rather in what amounted to a joint, agreed motion to dismiss the criminal case. The court declines to give these purported factual findings any weight in this proceeding. They were generated after the fact of plaintiff's discharge, and findings with the imprimatur of a district court were obviously not a part of any party's knowledge during the course of plaintiff's employment and ultimate discharge.

4

Otherwise, plaintiff contends that when Foshee was the city clerk (prior to becoming mayor) she had complained to the then-mayor about plaintiff's salary. (#58 at 13 of 31 at ¶22). Whatever "animus" toward plaintiff this might show on Foshee's part, there is no evidence it was racially motivated, as opposed to Foshee simply wishing a higher salary. Plaintiff also complains that he had prior approval from the previous mayor for his conduct and that when Foshee took office she commenced an investigation, rather than simply telling plaintiff the prior agreement was not recognized. Again, no evidence has been presented for inferring racial motivation for this conduct. Summary judgment is appropriate.

Plaintiff's next claim also involves his discharge and is made pursuant to 42 U.S.C. §§1981 and 1983. This is appropriate, as §1981 prohibits racial discrimination in the workplace. *See Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2529 (2013). Unlike Title VII, however, §1981 does not provide a vehicle for remedying racial discrimination in cases brought against state actors, such as municipalities. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735 (1989). Instead, §1983 provides the exclusive federal damages remedy in such a case. *Id.* Therefore, for the sake of clarity, plaintiff has cited both statutes.

The elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas,* whether that case is brought under §§1981 or 1983 or Title VII. *Morman v. Campbell County Mem. Hosp.,* 2015 WL 7753244 n.5 (10th

Cir.2015). Under the same reasoning described above as to the Title VII claim, summary judgment is granted as to the §§1981/1983 claim.

Third, plaintiff brings a claim pursuant to Title VII alleging hostile work environment. Title VII is not a "general civility code"; therefore, to avoid summary judgment on a hostile work environment claim, a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment. *See Unal v. Los Alamos Public Schools,* 2016 WL 360758, *5 (10th Cir.2016).[3]

Plaintiff cites "racial tension" within the IFD. Plaintiff also asserts that "his employees were not following his orders and every time he instructed them to complete a task there was pushback and they would submit a grievance to the union." (#58 at page 13 of 31 under CM/ECF pagination, ¶24). He also cites a hearsay statement by Kevin Sain of firefighters directing a racial slur at plaintiff outside of work. *Id.* at ¶¶25-26. Also cited is plaintiff's view that certain of his employees "routinely filed petty complaints" about plaintiff to the union, including such matters as workplace temperature and the channel on which the television was set. *Id.* at ¶27.

---

[3]A prima facie case involves showing that under the totality of the circumstances (i) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment and (ii) the harassment was racial or stemmed from racial animus. *Bloomer v. United Parcel Serv., Inc.,* 94 Fed.Appx.820, 825 (10th Cir.2004).

The court finds plaintiff's claim fails on several grounds. First, the examples cited are neither severe nor pervasive. Title VII is not meant to remedy "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). Also, none of the "harassment" was racial. Statements outside of the plaintiff's presence might be relevant to his subjective perception of a hostile work environment, but the plaintiff must have had knowledge of the statements during the relevant time period. *See Edwards v. Wallace Commt'y Coll.,* 49 F.3d 1517, 1522 (11th Cir.1995). Plaintiff has failed to establish this and therefore has not made out a prima facie case.

Still further, the cited incidents were committed by plaintiff's own subordinates. So far as the records reflects, plaintiff as Fire Chief had authority over the firefighters working under him. Idabel is not liable for a hostile work environment created by employees not directly under its control. Plaintiff correctly notes that an employer is directly liable for a hostile work environment created by an employee if the employer knew or should have known about the employee's conduct and failed to end it. *See Debord v. Mercy Health Syst. of Kan., Inc.,* 737 F.3d 642, 650 (10th Cir.2013). In the case at bar, however, it appears plaintiff himself was the controlling supervisor.

Plaintiff also seeks to impose direct liability on Idabel by asserting that part of the "hostile work environment" was Foshee beginning a formal investigation of plaintiff by the city employment attorney, which ultimately led to felony charges being filed against plaintiff. Plaintiff asserts: "If ever a hostile work environment existed, this was it." (#58 at page 10

7

of 31, ¶8). The court disagrees. Again, this is not conduct committed in the workplace. The fact that the conduct no doubt put plaintiff "under stress" both at work and otherwise is not the essence of a hostile work environment claim. Summary judgment is granted.

The fourth claim is brought pursuant to 42 U.S.C. §1983 and alleges a violation of the Fourteenth Amendment.[4] Plaintiff contends that the disparate treatment between himself and his Caucasian counterparts because of his race, the hostile work environment to which he was subjected and his employment termination were the result of policies, practices and customs of Idabel. A challenged practice may be deemed an official policy or custom for §1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision. *Schneider v. City of Grand Junction Police Dept.,* 717 F.3d 760, 770 (10th Cir.2013).

As the court reads plaintiff's brief, he appears to contend that the municipal "policy or custom" was simply Foshee's conduct in this case. The court disagrees. The treatment by a mayor of a single individual does not rise to that level. Rather, in order to establish a custom, the actions must be persistent and widespread. *See Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir.1996); *see also Wilson v. Cook Cnty.,* 742 F.3d 775, 780 (7th Cir.2014)("[a]lthough this court has not adopted any bright-line rules for establishing what

---

[4] In the amended complaint (#36), plaintiff brought as his fourth claim one for retaliation. The parties have filed a joint stipulation of dismissal of this claim (#57) and it will not be further addressed.

constitutes a widespread custom or practice, it is clear that a single incident – or even three incidents – do not suffice.").

Further, in *Worsham v. City of Pasadena,* 881 F.2d 1336, 1240-41 (5th Cir.1989) the court held that the existence of a council with the authority to review and set aside a city mayor's decision to terminate a municipal employee, which it did, precluded a finding that the mayor possessed final city policy-making authority over the employee's termination and, therefore, also precluded a finding of municipal liability resulting from the mayor's subsequently-vacated action. In the case at bar, the city council affirmed the decision to terminate plaintiff, but the principle still stands that the mayor did not possess final policy-making authority. Accordingly, plaintiff must present direct or indirect evidence of racial animus on the part of Idabel itself. He has failed to do so.

Plaintiff's fifth claim alleges malicious prosecution. The Amended Complaint (#36) asserts the malicious prosecution claim against both defendants, but the parties' briefing seems to assume the claim is only against Foshee in her individual capacity.[5] Therefore, this claim will be dismissed as against Idabel and will be addressed in the companion order as to defendant Foshee.

Plaintiff's sixth claim is for intentional infliction of emotional distress under Oklahoma law. In his response, plaintiff concedes Idabel's motion in this regard, but

---

[5] Although not filed of record, the parties' proposed Pretrial Order at pages 3-4 simply discusses "Malicious Prosecution Claim Against Foshee."

9

maintains the claim against Foshee in her individual capacity (#58 at page 30 of 31). Therefore, the claim is dismissed for purposes of the present motion.

It is the order of the court that the motion of the defendant City of Idabel for summary judgment (#48) is hereby GRANTED.

**ORDERED THIS 23rd DAY OF FEBRUARY, 2016.**

**Dated this 23rd day of February, 2016.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma